**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| **RICHARD LEE TABLER,** | : |
| **Petitioner,** | : |
| **v.** | :     **CIVIL ACTION NO. W-10-CA-034-RP** |
| | :     **CAPITAL HABEAS CORPUS** |
| **BOBBY LUMPKIN,** | : |
| **Director, Correctional Institutions Division:** |     **HON. ROBERT PITMAN, U.S.D.J.** |
| **Texas Department of Criminal Justice,** | : |
| **Respondent.** | : |

**PETITIONER'S MOTION TO ALTER OR AMEND JUDGMENT
PURSUANT TO FED. R. CIV. P. 59(e)
AND
TO EXPAND CERTIFICATE OF APPEALABILITY**

MARCIA A. WIDDER
GA Bar No. 643407
Attorney at Law
303 Elizabeth Street, NE
Atlanta, GA 30307
(404) 222-9202
marcy.widder@garesource.org

PETER J. WALKER
TX Bar No. 24075445
SHAWN NOLAN
PA Bar No. 53565
Assistant Federal Defenders
Federal Community Defender for the
Eastern District of Pennsylvania
Suite 545 West, The Curtis Center
601 Walnut Street
Philadelphia, PA 19106
(215) 928-0520
shawn_nolan@fd.org
peter_walker@fd.org

July 7, 2021

**TABLE OF CONTENTS**

STANDARD GOVERNING RULE 59(e)............................................................1

STANDARD GOVERNING CERTIFICATE OF APPEALABILITY ....................................2

I.     MR. TABLER HAS ADVANCED GROUNDS TO OVERCOME ANY
       PROCEDURAL DEFAULT. ...........................................................................2

II.    MR. TABLER RECEIVED INEFFECTIVE ASSISTANCE IN JURY
       SELECTION. ...........................................................................................11

III.   MR. TABLER RECEIVED INEFFECTIVE ASSISTANCE AT THE PENALTY
       PHASE....................................................................................................13

CONCLUSION.........................................................................................18

i

This is a capital habeas case. On June 10, 2021, this Court issued a Memorandum and Order, ECF No. 235 ("MO") denying Richard Tabler's petition for habeas corpus relief and granted a certificate of appealability ("COA") on one procedural ground and one substantive claim. ECF No. 235. Specifically, the Court granted COA on the questions whether (1) "state habeas counsel rendered ineffective assistance for failing to challenge his competency," and (2) Mr. Tabler "was prejudiced by trial counsel's failure to object" to extraneous victim-impact testimony at the penalty phase. ECF No. 235 at 85-86.

Petitioner respectfully requests pursuant to Fed. R. Civ. P. 59(e) that the Court reconsider its ruling and amend or alter its judgment, or, alternatively, that the Court expand the certificate of appealability. He relies on the following reasons:

## STANDARD GOVERNING RULE 59(E)

"A Rule 59(e) motion briefly suspends finality to enable a district court to fix any mistakes and thereby perfect its judgment before a possible appeal." *Banister v. Davis*, 140 S. Ct. 1698, 1708 (2020); *see also White v. New Hampshire Dep't of Employment Sec.*, 455 U.S. 445, 450 (1982) (rule "was adopted to make clear that the district court possesses the power to rectify its own mistakes in the period immediately following the entry of judgment.") (internal quotation marks omitted). Rule 59(e) "is properly invoked to correct manifest errors of law or fact." *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002). A district court has broad discretion to grant a motion to alter or amend judgment. *Lavespere v. Niagra Mach. & Tool Works*, 910 F.2d 167, 174 (5th Cir. 1990) *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075-76 (5th Cir. 1994). Moreover, Rule 59(e) does not set forth any particular grounds for relief. *Id*. Rather, a court may appropriately grant Rule 59(e) relief after weighing relevant circumstances on a case-by-case basis. *Id*.

As explained below, the Court has committed factual and legal errors that should result in the amendment of the judgment.

## STANDARD GOVERNING CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c)(2), a court should grant a certificate of appealability where a habeas petitioner makes a "substantial showing of the denial of a federal constitutional right." As the Supreme Court reiterated in *Buck v. Davis*, 137 S. Ct. 759 (2017), the COA inquiry is not coextensive with the merits of the claim. "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Id.* at 773 (quoting *Miller–El v. Cockrell*, 537 U.S. 322, 327 (2003)). A petitioner who seeks a COA must show "that a procedural ruling barring relief is itself debatable among jurists of reason; otherwise, the appeal would not 'deserve encouragement to proceed further.'" *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 n.4 (1983)).

Mr. Tabler explains below why, if the Court declines to grant Rule 59 relief, he meets this test on both procedural and merits grounds, and the Court should expand the COA to include additional claims.

## I.   MR. TABLER HAS ADVANCED GROUNDS TO OVERCOME ANY PROCEDURAL DEFAULT.

The Court neglects to rule, or rules in error, on several grounds that should have overcome any procedural default. The Court should amend judgment. At a minimum, it should rule that those grounds satisfy the test for the grant of a COA.

***The Court relies on the vacated portions of the Fifth Circuit's prior opinion.*** On appeal from the denial of habeas relief, the Fifth Circuit rejected Mr. Tabler's claims that his state post-

conviction counsel rendered ineffective assistance by failing to challenge his competence, and that they were ineffective in federal habeas proceedings "because they faced an ethical conflict in raising claims about their own ineffectiveness in the state competency hearing." *Tabler v. Stephens*, 588 F. App'x 297, 304-05 (5th Cir. 2014). The Circuit ruled that *Martinez v. Ryan*, 566 U.S. 1 (2012), did not extend to attorney errors in a competency hearing, which was the only state habeas proceeding that occurred. *Tabler*, 588 F. App'x at 305. Alternatively, relying on the bare appellate record without the benefit of the extra-record evidence later proffered in this Court on remand, the Circuit held that Mr. Tabler had failed to demonstrate that counsel's performance at the competency hearing was deficient. *Id*. at 306. The Circuit rejected Mr. Tabler's related statutory argument, holding that "[b]ecause Tabler's habeas counsel were not ineffective at his competency hearing, he cannot prevail on his *Martinez* claim even if he could otherwise make a substantial showing of ineffectiveness of trial counsel." *Id*.

This Court's opinion quotes heavily from these holdings, without mentioning that the discussion is no longer the law of the case. MO 19, 75. In 2015, on petition for rehearing, the Fifth Circuit vacated in relevant part its 2014 opinion and held that the *Martinez* rule "logically extends to ineffective assistance of habeas counsel that prevents an initial-review collateral proceeding from ever taking place." *Tabler v. Stephens*, 591 F. App'x 281, 281 (5th Cir. 2015). In other words, the Court of Appeals recognized that *Martinez* could excuse a default resulting from any deficient advocacy that prevented the state habeas proceedings from taking place, and not just deficiency during the competency hearing. It further recognized that Mr. Tabler's federal habeas counsel had a conflict of interest in arguing their own ineffectiveness in state habeas proceedings. The Court accordingly vacated that portion of its prior opinion holding that counsel were not ineffective at the competency hearing and also vacated in part this Court's judgment, remanding "to consider in

3

the first instance whether Tabler . . . can establish cause for the procedural default of any ineffective-assistance-of-trial-counsel claims pursuant to *Martinez* that he may raise, and, if so, whether those claims merit relief." *Id*. at 281.

On remand, Mr. Tabler made a detailed, expanded factual and legal showing of state habeas counsel's ineffectiveness. This Court cannot properly rely on the Fifth Circuit's vacated discussion to reject that proffer. In its remand order, the Court of Appeals directed this Court to determine whether state habeas counsel's deficient performance may have prevented the state habeas proceedings from taking place, without limiting that determination to performance during the competency hearing. The Court should accordingly amend its judgment and rule that the default is overcome for all the reasons in Section I of the amended habeas petition. Amended Habeas Petition, ECF No. 90 ("AH") at 91-125. At a minimum, because reasonable jurists could differ, the Court should amend its grant of COA to include all the grounds in Section I instead of limiting the grant to a review of counsel's failure to challenge Mr. Tabler's competency.

***The Court omits to rule on the voluntariness—and not only the competency—of Mr. Tabler's waiver of state habeas proceedings.*** Under the law of this Circuit and binding Supreme Court precedent, a federal court must consider the effect of a litigant's mental health problems on the voluntariness of a proffered waiver, regardless of whether the litigant meets the traditional test of competence. *See Mata v. Johnson*, 210 F.3d 324, 328-29 (5th Cir. 2000) (citing *Rumbaugh v. Procunier*, 753 F.2d 395, 396 (5th Cir. 1985)) (court must determine whether the person is suffering from mental disease or defect, whether it prevents him from understanding his legal position, and whether it prevents him from making a rational choice; this test incorporates the rule that a valid waiver must be voluntary); *see also Godinez v. Moran*, 509 U.S. 389, 400 (1993) (in addition to deciding whether a defendant is competent to waive constitutional rights, the trial court

must determine whether waiver is knowing and voluntary). As Mr. Tabler explained, this is also a requirement under Texas law. *See* AH 94 (citing *Ex parte Reedy* ).[1] Mr. Tabler argued that his state habeas counsel were ineffective for failing to develop evidence and argue that his waiver was not competent *and* that it was not voluntary. AH 95-110.

The Court's memorandum opinion mentions Mr. Tabler's argument that the waiver was neither competent nor voluntary (MO 20) but then does not rule on the voluntariness of the waiver and never assesses the combined effects of all the instances of state habeas counsel's ineffectiveness that made it involuntary. Federal law requires a court to assess the totality of the circumstances affecting the voluntariness of a waiver. *See United States v. Cardenas*, 410 F.3d 287, 292 (5th Cir. 2005) (citing *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). Here, the Court never assesses the combined effects of the following factors on Mr. Tabler's ability to make a rational choice among options: (1) his mental illness, AH 96; (2) the real or imagined threats against him in prison, AH 100; (3) his history of vacillation on waiving his rights, *id.*; (4) state habeas counsel's failure to advise him accurately of the effective deadline for deciding on waiver, AH 110; and (5) counsel's failure to investigate and therefore advise Mr. Tabler of the available evidence and legal arguments, AH 120.

The Court should amend judgment to rule that state habeas counsel's ineffectiveness rendered Mr. Tabler's waiver of his right to state habeas proceedings involuntary under the totality

---

[1] Specifically, in *Ex parte Insall*, 224 S.W.3d 213 (Tex. Crim. App. 2007), the CCA held that a waiver is "enforceable against a defendant when the waiver was knowingly, intelligently, and voluntarily given." *Id.* at 214. In *Ex parte Reedy*, 282 S.W.3d 492 (Tex. Crim. App. 2009), the CCA reaffirmed this requirement and explained that a habeas applicant could only knowingly "waive any claim that is based upon facts that, by diligence and with the assistance of trial counsel, he was aware of, or should have been aware of, at the time of the waiver." *Id.* at 503-04; *see* 43B George Dix & John Schmolesky, *Texas Practice: Criminal Practice & Procedure* § 58:9 (3d ed. 2019 update).

of the circumstances. Alternatively, the Court should expand its grant of COA to include, not only the question whether counsel were ineffective for not developing evidence and arguing that Mr. Tabler was incompetent to waive, but the question whether their ineffectiveness resulted in a waiver that was involuntary under the totality of the circumstances.

***The Court rules on an abandonment argument Mr. Tabler did not make and omits ruling on the abandonment argument he did make.*** The Court rules that state habeas counsel did not abandon Mr. Tabler because compliance with his desire to waive his rights did not constitute abandonment. MO 19. This ruling relies on the end result of counsel's abdication of duty without addressing counsel's abdication itself. The amended habeas petition sets forth the information counsel knew that obligated them to contest their client's stated desire to waive. AH 96-101. The Court does not address these reasons. The amended habeas petition also describes the many facets of counsel's abandonment of the advocate's role long before the trial court accepted Mr. Tabler's waiver and relieved them as counsel. Among other deficiencies, counsel: inaccurately and unethically informed the court that Mr. Tabler intended to waive all appeals even though counsel knew Mr. Tabler was vacillating; acquiesced in the court's refusal to fund further mitigation investigation even though counsel knew Mr. Tabler had changed his mind about waiving repeatedly and recently; acquiesced in the court's direction that the defense expert also function as the court's competency expert; gave inadequate guidance to Dr. Harrison; and never informed the court about the neuropsychological evaluation report he had received from Dr. Harrison and the many grounds it provided to undermine a valid waiver. AH 101-14. Most significantly, counsel ceased almost all work on the case after telling the trial court that Mr. Tabler had brought up the subject of waiver. AH 116-20 (citing *Maples v. Thomas*, 566 U.S. 266 (2012)). The Court does not address this discussion.

Following briefing in this case, one other Texas district court has found that state habeas counsel's acts and omissions "r[o]se to the level of abandonment" of a mentally ill capital habeas petitioner. *See Green v. Davis*, No. CV H-13-1899, 2020 WL 4805343 (S.D. Tex. Aug. 18, 2020), *appeal filed sub nom. Green v. Lumpkin*, No. 20-70021 (5th Cir. Sept. 16, 2020). The *Green* district court found that counsel's conduct went well beyond performing deficiently; he "severed the attorney-client relationship" by failing to file a single cognizable claim on his client's behalf, failing to investigate the case or communicate with Green for roughly seven years, and affirmatively misrepresenting his client's record of mental illness. Similarly, here, counsel made representations about Mr. Tabler's desire to waive and his mental health that were at best misleading, ceased investigating, acquiesced in the abrupt cut-off of mitigation investigation funds, and explicitly declined to advocate on their client's behalf at the waiver hearing. Their behavior severed the attorney-client relationship and amounted to abandonment.

The Court should amend judgment and rule that state habeas counsel abandoned Mr. Tabler, undermining the validity of his purported waiver of further proceedings. Alternatively, because jurists of reason could differ on this question, the Court should expand its grant of COA to include it.

***The Court omits any discussion of the inadequacy of the procedural bars to foreclose federal review.*** Some months after the state court allowed Mr. Tabler to withdraw his state habeas petition, Mr. Tabler moved through counsel to resume representation and set a new filing date for the petition. The Court of Criminal Appeals, relying on *Ex parte Reynoso* (*Reynoso I*), 228 SW.3d 163 (Tex. Crim. App. 2007), ruled that Mr. Tabler had no good cause for filing because his untimeliness was "attributable to Applicant's own continued insistence on foregoing any such remedy." *Ex parte Tabler*, No. WR-72,350-01 (Tex. Crim. App. Sept. 16, 2009). By that time,

however, *Reynoso I* was no longer good law. The Court of Criminal Appeals had ruled in *Ex parte Reynoso* (*Reynoso II*), 257 S.W.2d 715 (Tx. Crim. App. July 2, 2008), that the good cause determination required the court to focus not only on the petitioner's but also on counsel's actions. Because Reynoso's late filing was partly due to counsel's mistaken interpretation of the law, he had good cause. *Id*. at 723.

As Mr. Tabler argued, *Reynoso I*, an overruled precedent, constituted an inadequate procedural bar to filing his state habeas petition. AH 132-33. Under *Reynoso II*, state habeas counsel's inaccurate advice, which contributed to his decision to announce a prospective "waiver" "after my direct appeals," was good cause for filing an otherwise untimely petition. This Court, however, does not address the inadequacy of *Reynoso I* in its Memorandum Opinion. The Court should therefore amend its judgment and rule that the state court's refusal to allow the out-of-time filing of a state habeas petition rested on an inadequate procedural ground. Alternatively, the Court should at least determine that jurists of reason can debate the question and grant COA on this ground.

The Court also does not address Mr. Tabler's argument that the state habeas court employed deficient procedures to determine competency and waiver: the court provided insufficient notice, failed to appoint a court expert to assess Mr. Tabler, failed to take time to review the letter from the defense expert produced on the day of the hearing or hear testimony from the expert, and, most significantly, misinformed Mr. Tabler that his ability to file a habeas application was tied to the conclusion of direct appeal proceedings. AH 134-35. The state court's factual finding of waiver rested on these insufficient procedures and therefore constituted an inadequate bar to Mr. Tabler's claims. This Court should address Mr. Tabler's argument, amend its judgment, and rule that the waiver finding constituted an inadequate procedural bar.

8

Adding strength to Mr. Tabler's argument, several developments point to the waiver bar's inadequacy. First, the Texas Court of Criminal Appeals has acknowledged the importance of *Reynoso II*. The Court *sua sponte* reconsidered a habeas application from a defendant who had been allowed to waive prior to *Reynoso II*, and whose application was therefore dismissed. The CCA recognized that "the evolution of Article 11.071 caselaw"—i.e., *Reynoso II*— had caused it to "reconsider that dismissal." *Ex parte Wardlow*, WR-58,548-01, 2020 WL 2059742, at *1 (Tex. Crim. App. Apr. 29, 2020).

Second, a federal district court found a closely related Texas procedural bar based on waiver inadequate. *See Austin v. Davis*, 876 F.3d 757, 777 (5th Cir. 2017). There, a capital habeas applicant was permitted to waive state habeas proceedings and appointment of habeas counsel, but could not know the time when the waiver would be effective, because that deadline depended on the appointment of counsel. The State conceded this inadequacy on appeal. *Id*.

Third, two judges of the Texas Court of Criminal Appeals have doubted the adequacy of their own waiver procedure. *Ex parte Gonzales*, 463 S.W.3d 508 (2015). Judges Yeary and Alcala, dissenting from the dismissal of a subsequent writ application, wrote: "Has the Court determined that there is no requirement under state law that a capital habeas applicant be competent to waive his statutory right to post-conviction collateral attack of his conviction and death sentence? If so, it should say so. Because the Court sidesteps this important issue, I dissent." *Ex parte Gonzales*, 463 S.W.3d 508, 513 (Tex. Crim. App. 2015).

These developments support Mr. Tabler's argument that the Court should alter or amend judgment on this ground. At a minimum, and not least because of the actual debate about the adequacy of Texas waiver procedures, the Court should determine that jurists of reason could debate this issue and grant COA.

***The Court rests its opinion on factual mistakes.*** Mr. Tabler moved for an evidentiary hearing on the ineffectiveness of both state habeas counsel and trial counsel, but this Court denied the motion. ECF No. 148. The Court bases its memorandum opinion in part on factual conclusions drawn from the bare record. But the record contradicts those conclusions, and a testimonial hearing would further undermine them. First, the Court determines that Mr. Tabler "was aware of the relevant deadlines." MO 20. The amended petition explains in detail the ample evidence that Mr. Tabler announced his prospective waiver under the inaccurate impression that it would not take effect until his direct appeal was over. And before the Court of Criminal Appeals had decided the direct appeal, he had asked to reinstate his habeas proceedings. AH 49, 101.

Second, the Court determines that counsel "began a mitigation investigation with the assistance of two mitigation specialists." MO 20. The first of these was the mitigation specialist who had worked for trial counsel, and who rejected state habeas counsel's outreach because a conflict of interest prevented him from "reviewing my own work." AH 32. The second specialist met Mr. Tabler once, reviewed records, and consulted with state habeas counsel. Her work came to an abrupt halt, and the court never funded her further investigation, once counsel advised the court (misleadingly) that Mr. Tabler had indicated an intention to waive his right to file a petition. AH 33-34. Describing her work as the "beginning" of a mitigation investigation overstates the extent of that investigation and obscures the reality—wholly supported by the record—that the investigation stopped in its tracks once Mr. Tabler raised the possibility of waiver.

The Court should amend judgment to correct these factual inaccuracies and grant relief or, at least, an evidentiary hearing to ascertain the truth of Mr. Tabler's confusion about, or awareness of, the relevant deadlines and the extent, or non-existence, of a mitigation investigation. Alternatively, because reasonable jurists could differ about whether these factual issues and state

habeas counsel's overall performance require a hearing, the Court should expand the COA to include that question.

## II.     MR. TABLER RECEIVED INEFFECTIVE ASSISTANCE IN JURY SELECTION.

The Court omits any ruling, or rules in error, on several grounds that should have required habeas relief from Mr. Tabler's conviction. The Court should amend judgment. At a minimum, it should rule that those grounds, and the voir dire claim as a whole, require the grant of a COA.

*The Court overlooks Mr. Tabler's constitutional challenge to the Texas statute allowing excusal by agreement.* Mr. Tabler argued that Tex. Code Crim. Proc. Art. 35.05 is unconstitutional as applied. AH 158. The Court does not rule on this argument. Because the statute's application deprived Mr. Tabler of a meaningful opportunity to assess the jurors' qualifications, the Court should amend judgment and grant relief, or at least grant COA, on this ground.

*The Court mischaracterizes Mr. Tabler's claim and rules on a claim he did not make.* Mr. Tabler argued that trial counsel's unreasonably superficial voir dire advocacy failed to ascertain whether or not multiple jurors were qualified to consider a life sentence. This argument relied in part on *Morgan v. Illinois*, 504 U.S. 719 (1992), which held that a capital defendant is constitutionally entitled to voir dire questioning sufficient to "life qualify" the jurors. AH 159, 161. The *Morgan* court held, "Because the "inadequacy of *voir dire* leads us to doubt that petitioner was sentenced to death by a jury empaneled in compliance with the Fourteenth Amendment, his sentence cannot stand." *Id*. at 739.

The Court does not cite *Morgan* for this proposition (*see* MO 24) and does not address the *Morgan*-based argument. Instead, the Court rejects the claim because Mr. Tabler has not shown that any biased jurors sat at his trial. MO 26, 27 28. Because the claim is that the voir dire was inadequate to identify any such jurors, the record's silence on that point should support, not

undercut, the claim. The Court should amend judgment or, because reasonable jurists could differ in assessing trial counsel's voir dire performance, grant COA on this ground.

*The Court applies improper standards for assessing performance and prejudice.* The Court repeatedly cites the Fifth Circuit's opinion in *Teague v. Scott*, 60 F.3d 1167, 1172 (5th Cir. 1995), which held that an attorney's voir dire conduct "cannot be the basis for a claim of ineffective assistance of counsel unless counsel's tactics are shown to be so ill chosen that it permeates the entire trial with obvious unfairness." MO 24, 30, 33. Applied in isolation, *Teague* would contravene the constitutionally prescribed *Strickland* test by blending the question of strategy—ordinarily a performance prong concern—with the question of prejudice. But the *Teague* court did not offer its formula to supplant the *Strickland* test. Teague's claim failed because he did not "meet the requisite showing of prejudice under the *Strickland* test." *Id*. at 1172-73.

In similar circumstances, the Supreme Court has reversed the Fourth Circuit for adding a new component to *Strickland*. In *Williams v. Taylor*, 529 U.S. 362, 391-92 (2000), the state court erroneously engrafted an additional "fundamental fairness" requirement on an ordinary ineffective assistance claim. The Court granted relief because of the state court's mistaken "departure from a straightforward application of *Strickland* when the ineffectiveness of counsel *does* deprive the defendant of a substantive or procedural right to which the law entitles him." *Id*. at 393 (emphasis in original). The *Teague* "infect the trial with unfairness" test would equally depart from *Strickland* if employed as a substitute for *Strickland*'s familiar performance and prejudice prongs. Because this Court's Memorandum Opinion applies the *Teague* test to each of the challenged jurors without applying *Strickland* to them individually or collectively, it should amend judgment and grant relief. Alternatively, because jurists of reason could differ on the proper relationship between the *Teague* test and *Strickland*, the Court should grant a certificate of appealability on this ground.

Finally, even if the Court does not amend judgment or expand its grant of COA on any of the grounds above, it should expand the grant of COA to include the voir dire claim (Claim I.A) as a whole. Trial counsel not only failed to question jurors adequately to insure they were life-qualified, but also acquiesced in the excusal of other unquestioned jurors and the prosecutor's inaccurate statements of law. Reasonable jurists could differ about whether this collection of failings deprived Mr. Tabler of the effective assistance of counsel. The Court should expand COA to include Claim I.A.

### III.   MR. TABLER RECEIVED INEFFECTIVE ASSISTANCE AT THE PENALTY PHASE.

The Court omits several grounds that should have required habeas relief from Mr. Tabler's death sentence. The Court should amend judgment. At a minimum, it should grant COA on those grounds.

***The Court overlooks twenty-four proffered declarations by lay witnesses and experts and imposes a pleading requirement that contradicts the applicable habeas rules.*** The Court rejects several penalty phase claims, in part, because it views Mr. Tabler's allegations as unsupported by "a single affidavit" delineating the content of witnesses' proposed testimony or indicating whether they would have been available to testify at trial. MO 51-52, 63, 71.[2] It views the allegations as "tantamount to sheer speculation." MO 52.

The Court apparently overlooks Mr. Tabler's supplemental appendix, which includes twenty-four declarations from lay witnesses and experts, each of them stating a willingness to provide the same information to the defense team at the time of trial and—except for his mother

---

[2] The Court makes a similar ruling in rejecting the guilt-innocence phase claim concerning State's witness Kim Geary. MO 45. If it amends judgment or grants COA on this ground, it should include Claim I.C in the grant of relief.

and sister, who did testify—a willingness to testify. *See* ECF No. 121 at SA002-SA058. Mr. Tabler's reply in support of his habeas petition argued in detail why his factual proffers were legally sufficient and procedurally appropriate. *See* ECF No. 132 at 46. Specifically:

- He proffered eighteen lay declarations and five expert declarations made under penalty of perjury in support of his claim that counsel failed to conduct a constitutionally adequate background and mental health investigation (subsections A and B of Claim II).

- The initial habeas petition set forth a prima facie claim even without the declarations by making specific, detailed factual allegations. Neither the federal habeas statute, the rules governing habeas cases, nor the rules of this district require a habeas petitioner to attach affidavits to the initial petition. *See* 28 U.S.C. § 2242; Habeas Rule 2(c)(2); Local Rule CV-3; Form, Petition for Writ of Habeas Corpus, 28 U.S.C. § 2254, Adopted by All Federal Courts in Texas.

- The cases the Respondent cited (including *Day v. Quarterman*, 566 F.3d 527, 529-30 (5th Cir. 2009)) involved not pleading but proof: the petitioners had *never* substantiated their factual allegations with witness statements or other evidence before judgment. The same is true of other cases on which this Court relies. MO at 51, 63, 71 (citing *Day*, *Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010), and *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002)).

- Mr. Tabler not only pled specific facts but requested an evidentiary hearing to prove them. Rejecting his well-pleaded claims without testing his allegations at an evidentiary hearing would violate his right to due process of law. *See, e.g.*, *Herman v. Claudy*, 350 U.S. 116, 119 (1956).

*See* ECF No. 132 at 46-49.

14

The Court relies on Mr. Tabler's alleged failure to provide supporting affidavits in its analysis of trial counsel's performance in Claims II.A, B, D, and G. The evidence that trial counsel could have developed and presented at trial, however, is also relevant to its assessment of prejudice. Accordingly, the Court should amend judgment on both the performance and prejudice prongs of Claims II.A, B, D, and G, and grant relief on those grounds. Alternatively, the Court should grant an evidentiary hearing to allow Mr. Tabler to develop the evidence supporting his claims.

At a minimum, because jurists of reason could debate whether habeas petitioners must include witness affidavits or other evidence with their initial petitions in order to plead a prima facie case, and whether Mr. Tabler's proffer requires an evidentiary hearing, the Court should grant COA on each of these grounds.

***The Court does not assess counsel's deficient performance or the resulting prejudice in the aggregate.*** Mr. Tabler presents a single claim that trial counsel were ineffective at the penalty phase. He argues that they were ineffective because they *neither* conducted the constitutionally adequate investigation of background and mental health that should have served as a foundation to implement their own strategy, *nor* adequately prepared the witnesses they chose to present, *nor* properly investigated and rebutted the state's case in aggravation, *nor* objected to inadmissible evidence and summation misconduct, *nor* adhered to their own theory of mitigation in summation. AH 194. Even if counsel could reasonably omit to do one or more of these things, they did none of them, and therefore provided Mr. Tabler constitutionally deficient representation within the meaning of *Strickland*.

The Supreme Court recently took the same approach to implementing *Strickland*. In *Andrus v. Texas*, 140 S. Ct. 1875 (2020), the Court held that:

> Andrus' counsel fell short of his obligation in multiple ways: First, counsel performed almost no mitigation investigation, overlooking vast tranches of mitigating evidence. Second, due to counsel's failure to investigate compelling mitigating evidence, what little evidence counsel did present backfired by bolstering the State's aggravation case. Third, counsel failed adequately to investigate the State's aggravating evidence, thereby forgoing critical opportunities to rebut the case in aggravation. Taken together, those deficiencies effected an unconstitutional abnegation of prevailing professional norms.

140 S. Ct. at 1881–82. The Court described these pervasive failings in detail and concluded that

the first failure "cannot 'be justified as a tactical decision,'" the second "further demonstrate[s]

counsel's constitutionally deficient performance," and the third "reinforces counsels' deficient

performance." *Id*. at 1883, 1884, 1884 (quoting *Wiggins*, 539 U.S. at 522). The Court reached one

conclusion about deficient performance: "There is no squaring that conduct, certainly when

examined alongside counsel's other shortfalls, with objectively reasonable judgment." *Id*. at 1885.

Only then, "[h]aving found deficient performance," did the Court turn to the question of prejudice.

*Id*.

This Court's memorandum opinion, unlike the Supreme Court's opinion in *Andrus*, never

assesses the reasonableness of counsel's performance as a whole. It does not address the

cumulative deficiency of counsel's failure to investigate background mitigating evidence and

mental health evidence and failure to prepare their own witnesses using the evidence they did

possess, nor the additive deficiencies in their preparation to rebut the case in aggravation and non-

advocacy for their client's life at trial. The Court should have assessed counsel's numerous

deficiencies in the aggregate.

In a related vein, the Court's assessment of cumulative prejudice misapplies *Strickland*.

The Court rules that, because it has not found any individual deficiencies, it has none to cumulate.

MO 83-84. But throughout the Memorandum Opinion the Court alternatively assumes that each

of those instances amounted to deficient performance, and rules that each was individually non-

prejudicial. Because *Strickland* requires a cumulative assessment of prejudice, the Court should have considered the cumulative prejudicial impact of all the instances of assumed deficient performance.

The Court should amend judgment to consider counsel's pervasive failure to make a constitutionally adequate case for life. At a minimum, because reasonable jurists could differ, the Court should expand the certificate of appealability to embrace the questions whether counsel's overall penalty phase performance was deficient, and whether that overall performance was prejudicial, instead of limiting the appeal to counsel's failure to object to victim impact evidence.

## CONCLUSION

For the reasons above, the Court should grant the motion pursuant to Rule 59 to alter or amend judgment, order an evidentiary hearing, determine that any procedural bars are overcome, and grant Mr. Tabler relief from his conviction and sentence. Alternatively, the Court should expand the certificate of appealability to include the procedural grounds and claims for relief described above.

<table>
<tr><td></td><td>Respectfully submitted,</td></tr>
<tr><td></td><td></td></tr>
<tr><td></td><td>/s/ Peter J. Walker</td></tr>
<tr><td>MARCIA A. WIDDER</td><td>PETER J. WALKER</td></tr>
<tr><td>GA Bar No. 643407</td><td>TX Bar No. 24075445</td></tr>
<tr><td>Attorney at Law</td><td>SHAWN NOLAN</td></tr>
<tr><td>303 Elizabeth Street, NE</td><td>PA Bar No. 53565</td></tr>
<tr><td>Atlanta, GA 30307</td><td>Assistant Federal Defenders</td></tr>
<tr><td>(404) 222-9202</td><td>Federal Community Defender for the</td></tr>
<tr><td>marcy.widder@garesource.org</td><td>Eastern District of Pennsylvania</td></tr>
<tr><td></td><td>Suite 545 West, The Curtis Center</td></tr>
<tr><td></td><td>601 Walnut Street</td></tr>
<tr><td></td><td>Philadelphia, PA 19106</td></tr>
<tr><td></td><td>(215) 928-0520</td></tr>
<tr><td></td><td>shawn_nolan@fd.org</td></tr>
<tr><td>Dated: July 7, 2021</td><td>peter_walker@fd.org</td></tr>
</table>

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I served the foregoing Motion to Alter or Amend Judgment or to Expand Certificate of Appealability on the following by operation of the electronic case filing system:

> Fredericka Sargent
> Assistant Attorney General
> Office of the Attorney General of Texas
> Post Office Box 12548
> Austin, Texas 78711-2548

/s/ Peter J. Walker_____
Peter J. Walker

Dated: July 7, 2021